IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | CR. NO. 2:21-cr-600 |
| | ) | |
| v. | ) | 18 U.S.C. § 371 |
| | ) | |
| KARL HENRY ZERBST, JR. | ) | |
| | ) | **INFORMATION** |
| | ) | |

THE U.S. ATTORNEY CHARGES:

## COUNT 1

### BACKGROUND

1. At all times relevant to this Information:

   a. Federal Home Loan Bank of Atlanta ("FHLBA") is a cooperative bank regulated by the Federal Housing Finance Agency that offers community development grants to help member financial institutions provide economic development credit to neighborhoods and communities. FHLBA is one of 11 regional banks in the Federal Home Loan Bank System, which raises funds in the global financial markets and distributes the proceeds to members and local communities. FHLBA's Affordable Housing Program (AHP) is one of the largest sources of private sector grants for housing and community development in the nation. This competitive grant program encourages member financial institutions to partner with local housing providers (sponsors) to secure funds for the purchase, construction or rehabilitation of affordable owner-occupied or rental housing units. Projects serve low-to-moderate income households, and may include households with special needs including seniors, persons with disabilities and the homeless.

1

b.  FHLBA disburses some of its AHP funds through the Energy Efficiency/Weatherization Rehabilitation Product (EWP) and the Veterans Rehabilitation Product (VRP). The EWP is available to any household in which the income is equal to or less than 80% of the median income. The VRP is available to households of United States Military veterans or spouses of veterans, in which the income is equal to or less than 80% of the median income.

c.  The maximum subsidy for each household is $12,500. From those funds, 12% of the funding can be used to pay intermediary and member bank fees. The funds can be used to rehabilitate the following: exterior doors, HVAC, insulation, roof, windows, low flow plumbing fixtures, exterior ramp, sidewalk/driveway, handicapped bathrooms, kitchen cabinets/sinks, carpentry to widen doors, and floor coverings. The grants are five-year forgivable loans for eligible grantees. If a grant recipient sells their home prior to the end of the five-year retention period, an amount equal to a pro rata share of the AHP direct subsidy that financed the rehabilitation of the home is to be repaid to FHLBA from any net gain realized upon the sale of the home. To enforce this rule, FHLBA files promissory notes on the homes of the grantees at the time the grant money is funded.

d.  FHLBA disburses the AHP funds to community member banks that sponsor the program. The community member banks often rely on intermediaries to locate prospective program participants, to hire/manage the contractors conducting the rehabilitative work, and to hire/manage the third-party inspectors to inspect the work. FHLBA relies on a third-party inspector to inspect the work done by the contractor for cost-reasonableness to ensure that the amount the contractor is charging for their work is

within industry standards.

e.  For each project, FHLBA requires the member bank, intermediary, contractor, and inspector to submit a certification containing a line itemed list of estimated construction costs on a FHLBA form titled Cost Estimate Certification or Pre-work Certification. Once costs are approved by the FHLBA, the contractor completes the rehabilitation work. After the rehabilitation work is completed, the member bank, intermediary, contractor, and inspector must submit another certification containing a line itemed list of the actual costs on a FHLBA form, titled Funding Certification or Post-Work Certification, to obtain the grant funds. The FHLBA then sends the grant funds to the member bank, who in turn sends the funds to the intermediary to disburse payments to the contractor and inspector.

f.  As part of these certifications, the intermediary, inspector, and contractor certify in both the FHLBA Cost Estimate Certification and Funding Certification forms that they do not have a conflict of interest or the appearance of conflict of interest with any other party associated with the application. They also certify they have not provided services for compensation for any parties involved in the transaction within the last year other than their designated contracting or inspection services.

g.  Ameris Bank, Bank of North Carolina (formerly known as South Coast Bank), and South Atlantic Bank ("the member banks"), are member financial institutions of FHLBA.

## THE CONSPIRACY

2.  Beginning in or around December 2014, and continuing through in or around March 2019, in the District of South Carolina and elsewhere, KARL HENRY ZERBST, JR. (hereinafter "ZERBST") and others known and unknown to the United States Attorney, knowingly and

intentionally combined, conspired, confederated, agreed, and had a tacit understanding to confederate with each other to commit offenses against the United States, specifically:

    a.    the offense of wire fraud, including wire fraud affecting a financial institution: that is, to devise a scheme and artifice to defraud and to transmit and cause to be transmitted by means of wire communication in interstate commerce signals, signs, and sounds for the purpose of executing such scheme and artifice, in violation of, in violation of Title 18, United States Code, Section 1343; and

    b.    the offense of knowingly making a false statement for the purpose of influencing the action of FHLBA and its member banks in connection with a loan application, in violation of Title 18, United States Code, Section 1014.

## OBJECT OF THE CONSPIRACY

The principal object of the conspiracy was for the members of the conspiracy to enrich themselves through their scheme to defraud the FHLBA program.

## MANNER AND MEANS OF THE CONSPIRACY

3.    It was part of the conspiracy that ZERBST and other members of the conspiracy, both known and unknown:

    a.    Sought grant monies from FHLBank Atlanta for the rehabilitation of low-income homes.

    b.    Submitted certifications to FHLBank Atlanta that stated that there were no conflicts of interest between the parties, and that no party to the transaction had "provided services for compensation for any [of the] parties involved in the transaction" "within the last year other than" those designated in the agreement, when in fact, parties had received

money from other people involved in these transactions that were not related to the fees or services detailed in these certifications.

c.  Submitted certifications to FHLBank Atlanta that homes had been inspected and that the cost of the rehabilitation work was reasonable, when in fact, the homes either were never inspected, or were never inspected for cost reasonableness.

d.  Divided among themselves the profits from the overall scheme and artifice to defraud.

## OVERT ACTS

4.  In furtherance of the conspiracy and to effect the objects of the conspiracy, the following overt acts, among others, were committed in the District of South Carolina:

a.  From in or about December 2014 through in or about June 2017, ZERBST and a co-conspirator known to the United States Attorney, knowingly signed and submitted 91 FHLBA Funding Certifications to South Coast Bank and the Bank of North Carolina that contained false statements, including, but not limited to, false certifications regarding whether ZERBST had a conflict of interest with other parties to the certification applications, to obtain grant money from the FHLBA.

b.  From in or about January 2015 through in or about August 2017, ZERBST and a co-conspirator known to the United States Attorney, conspired to conduct 43 financial transactions to conceal kickbacks ZERBST obtained by defrauding the FHLBA.

All in violation of Title 18, United States Code, Section 371.

# FORFEITURE

CONSPIRACY:

Upon conviction to violate Title 18, United States Code, Section 371 (conspiracy to violate 18 U.S.C. §§ 1014 and 1343) as charged in this Information, the Defendant, KARL HENRY ZERBST, JR., shall forfeit to the United States any property, real or personal, which constitutes, is traceable, or is derived from any proceeds the Defendant obtained, directly or indirectly, as the result of such violation.

PROPERTY:

Pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c), the property which is subject to forfeiture for the violation charged in this Information includes, but is not limited to, the following:

> Cash Proceeds / Forfeiture Judgment:
>
> A sum of money equal to all proceeds the Defendant obtained directly or indirectly as the result of the offense charged in this Information, or traceable to such property, and all interest and proceeds traceable thereto.

SUBSTITUTE ASSETS:

If any of the property described above as being subject to forfeiture, as a result of any act or omission of the Defendant-

> A.  Cannot be located upon the exercise of due diligence;
> B.  Has been transferred or sold to, or deposited with, a third person;
> C.  Has been placed beyond the jurisdiction of the court;
> D.  Has been substantially diminished in value; or
> E.  Has been commingled with other property which cannot be subdivided without difficulty;

it is the intention of the United States, pursuant to Title 18, United States Code, Section 982(b)(1), incorporating Title 21, United States Code, Section 853(p), to seek forfeiture of any other property

of the Defendants up to the value of the forfeitable property.

Pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c).

_____
M. RHETT DEHART (AES)
ACTING UNITED STATES ATTORNEY